FILED
2020 Jun-08  AM 10:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| JEANNYE PALMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 6:19-cv-00219-LSC |
| | ) | |
| MASONITE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Plaintiff Jeannye Palmer ("Plaintiff" or "Palmer") brings suit against her former employer Masonite Corporation ("Defendant" or "Masonite"), alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Before the Court is Defendant's motion for summary judgment. (Doc. 22.) The motion has been briefed and is ripe for review. For the reasons stated below, Defendant's motion for summary judgment is due to be granted.

## I.   BACKGROUND[1]

### a.   PLAINTIFF'S JOB AND RESPONSIBILITIES WITH DEFENDANT

Plaintiff began working for Defendant as a customer service representative on March 17, 1997. (Def's Ex. 1 at 12, 25.) In 2015, Defendant promoted her to the position of Customer Service Manager. (Def's Ex. 4 at 29.) As a Customer Service Manager, her primary responsibility was to supervise the work of the customer service representatives at Defendant's Haleyville, Alabama residential door plant and at its Denmark, South Carolina residential door plant. (Def's Ex. 5 at ¶ 4.) She typically supervised four or five employees at the Haleyville location and two employees at the Denmark location. (Def's Ex. 1 at 36–37.)

### b.   DEFENDANT'S TIMEKEEPING AND OVERTIME POLICIES

At all times relevant to this action, Defendant employed the "Kronos" timekeeping system to track employee time. (*Id.* at 31.) Around 2016, Plaintiff gained manager access to Kronos time records of the employees under her supervision.

---

[1]      The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .").

(*Id.* – Def's Depo. Ex. 5.) Afterwards, she became responsible for reviewing the time-entries of employees working under her supervision, ensuring that the time-entries were accurate and approving them. (*Id.* at 48–49; Def's Ex. 3 at 44–45.)

As Customer Service Manager, it was appropriate for Plaintiff to use Kronos to alter and adjust the time records of employees under her supervision to correct human error, such as a failure to clock in or out. (Def's Ex. 1 at 48.) However, she understood that it was improper to edit or alter employee time records in the Kronos timekeeping system to deprive employees of credit or pay for time worked. (*Id.* at 49.) Indeed, Defendant's employee handbook specifically states that "[a]ltering, falsifying, tampering with time records, or recording time on another employee's time record will result in disciplinary action, up to and including termination of employment." (*Id.* – Def's Depo. Ex. 2 at D-0265.)

During her time as Customer Service Manager, Plaintiff required employees working under her supervision to obtain permission prior to working overtime. (*Id.* at 50.) However, she understood that, even if employees worked unauthorized overtime, the employees were still entitled to be paid for all time worked. (*Id.*)

Plaintiff claims her supervisors, Tom Green and Dave Longmuir, informed her that she needed to reduce the amount of overtime worked by employees under her supervision. (*Id.* at 74–75.)  Green also told Plaintiff that she should not pay

overtime to those employees who worked overtime without prior approval. (*Id.* at 204.) However, during the investigation into Plaintiff's timekeeping practices, she did not share this information with investigators. (Def's Ex. 4 at 53.) Furthermore, no one ever instructed Plaintiff to require employees to work off the clock or to change employees' time records to reduce or eliminate overtime. (Def's Ex. 1 at 50.)

### c. INVESTIGATION INTO PLAINTIFF'S TIMEKEEPING PRACTICES

On December 7, 2017, Plaintiff reported to Amanda Blankenship that she wanted to terminate Detweda Ann Whitten, a customer service representative under Plaintiff's supervision, for sleeping at her desk during work hours. (Def's Ex. 5 at ¶ 13.) At that time, Blankenship was Regional Human Resource Manager for Defendant. (Def's Ex. 2 at 7.) As part of her job, Blankenship supported Defendant's residential customer service group, among other areas. (*Id.*)

Blankenship conducted a meeting with both Plaintiff and Whitten via telephone to discuss the complaint against Whitten. (*Id.* at 109–10.) During the meeting, Whitten stated that she felt tired during work because she had stayed up late the night before, working from home. (Def's Ex. 5 at ¶ 14.) She further claimed that, on several occasions, Plaintiff had instructed her to work from home, off the clock, and without pay. (*Id.* at ¶ 15.) Finally, she claimed that Plaintiff often made after-the-fact edits to Whitten's time records in the Kronos timekeeping system to

deprive Whitten of pay for hours that she worked. (*Id.* at ¶ 16.)

Following Whitten's initial accusations against Plaintiff, Blankenship launched an investigation into Plaintiff's timekeeping practices. (*See id.* at ¶¶ 17, 23.) During the investigation, Blankenship had several conversations with Plaintiff regarding the allegations. (Def's Ex. 2 at 111.) Plaintiff understood that this investigation concerned whether she had required or allowed employees to work off the clock without pay and whether she had improperly altered time records. (Def's Ex. 1 at 68.)

To support her claims, Whitten produced materials detailing how Plaintiff had required her to work off the clock without overtime pay during 2015, 2016, and 2017. (Def's Ex. 2 – Pl's Depo. Ex. 3.) These materials did not mention whether or when Plaintiff had allegedly made improper edits to Whitten's time records, though they did allege that Plaintiff openly forced Whitten and other customer service representatives to work from home without pay. (*See id.*) To challenge Whitten's claims, Plaintiff sent an email to Blankenship discussing prior incidents involving Whitten. (Def's Ex. 1 at 68–69.) In that same email, dated December 30, 2017, Plaintiff asserted that she did not begin approving employee time on Kronos in Masterpack until 2016 and that a manager named Larry Cagle previously handled approving employee time. (*Id.* – Def's Depo. Ex. 5.)

Larry Cagle worked at the Haleyville plant, holding the position of assistant plant manager and later the position of maintenance manager. (*Id.* at 94.) At one point, he was responsible for approving and editing Kronos time-entries for employees in several positions at the plant, including customer service. (*See id.* at 95–96.) His responsibilities never involved supervising customer service employees, however. (*Id.*) He is related to Whitten through marriage: his brother was married to Whitten's sister-in-law. (Pl's Ex. B at 24–25.) Plaintiff estimates Cagle to be around sixty or seventy years old. (Def's Ex. 1 at 109.) Notably, Whitten affirmatively denies that Cagle ever told her that she "couldn't tell him the hours that [she was] working" or that she should complete her work from home. (Pl's Ex. B at 26, 172.)

As part of the investigation, Blankenship spoke with other customer service representatives over whom Plaintiff supervised and asked them to contact her if they had ever worked without pay. (Def's Ex. 2 at 82.) In addition to Whitten, two other representatives, Carolyn Weems and Betty Jo Broadfoot, informed Blankenship that they had worked overtime with Plaintiff's knowledge and without pay. (Pl's Ex. A at 52–53, 66–67; Def's Ex. 2 at 78.)[2] Unlike Whitten, Weems only claimed to have had

---

[2]       Evidence of what Whitten, Weems, and Broadfoot told Blankenship regarding Plaintiff arises in the record primarily through Blankenship's deposition testimony. (*See* Def's Ex. 2.) Plaintiff argues that Blankenship's testimony as to the allegations she heard from those employees qualifies as inadmissible hearsay and should be disregarded by this Court. However, a statement only qualifies as hearsay if it is "offer[ed] in evidence to prove the truth of the matter asserted in

issues with her overtime during 2017. (Pl's Ex. A at 33.)[3] Furthermore, she admitted that Plaintiff had never expressly ordered her to work off the clock. (*Id.* at 21.) However, she did claim that, on numerous occasions, she understood Plaintiff to be implying that work had to be done within a certain amount of time, regardless of whether that deadline required working off the clock. (*Id.* at 20–21.) Furthermore, Weems believed that Plaintiff was aware that she was working off the clock in order to complete certain tasks within the time allotted by Plaintiff. (*Id.* at 66.)[4]

To verify the claims against Plaintiff, Blankenship began a detailed examination of the Kronos time-card audit trail on Whitten's hours for the eleven-month period of January 1, 2017 through December 3, 2017. (Def's Ex. 5 at ¶ 17.) She also performed a similar examination with respect to the hours claimed by Weems and Broadfoot, as well as any other employees who reported to Plaintiff at the Haleyville plant. (Def's Ex. 2 at 53–54.) She intended for her investigation of the timekeeping in 2017 to serve as a "spot check" of Whitten's records. (*Id.* at 107.) She claims that, had she not found infractions against Whitten in 2017, she would

---

the statement." FED. R. EVID. 801(c). Thus, the Court may properly consider this testimony in the context of determining whether Defendant believed the allegations against Plaintiff.

[3]     Betty Jo Broadfoot did not offer deposition testimony in this action, and it is unclear from the record whether she claimed wrongdoing that pre-dated 2017.

[4]     Like Whitten, Weems affirmatively denies that Cagle behaved improperly, claiming that she did not "think that he ever did anything to [her] time." (Pl's Ex. A at 54.)

have expanded her search to include time records for preceding years. (*Id.*)

The Kronos time-card audit trail contains an "Edit Punch" column that indicates where a user has revised, edited, altered or otherwise adjusted the employee time record. (Def's Ex. 5 at ¶ 18 – Blankenship's Ex. 3.) By examining this column on Whitten's audit trail, Blankenship discovered that, on several occasions Plaintiff edited Whitten's time punches in ways that appeared done for the purpose of reducing Whitten's hours down to forty hours per week. (*Id.* at ¶ 20.) She further found that, in ten of the eleven months examined in 2017, Plaintiff had improperly edited, altered, and adjusted Whitten's time record punches in a way that deprived Whitten of credit for time she worked. (*Id.* at ¶ 21.) Moreover, Blankenship's examination of the audit trails for other customer service representatives, including Weems and Broadfoot, during the same period led her to believe that Plaintiff had been improperly editing those employees' time records in Kronos and incorrectly coding leaves of absence in situations where employees did not have the supporting balances. (*Id.* at ¶ 22.)

Having discovered these discrepancies, Blankenship believed that there was sufficient evidence of improper time editing in her spot check of 2017 that there was no need for review of additional years. (Def's Ex. 2 at 108.) Plaintiff maintains that she never engaged in any improper editing of employee time records or required

employees to work without pay. (Def's Ex. 1 at 142.) Nonetheless, based on her review of the Kronos time-card audit trails for the complaining employees, as well as the conversations she had with those same employees, Blankenship concluded that Plaintiff had indeed allowed employees to work off the clock and did not pay them for the full time that they had worked. (Def's Ex. 2 at 58–59.)

### d. PLAINTIFF'S TERMINATION AND AFTERMATH

Blankenship presented her investigation results to Defendant's legal counsel, to her supervisor, Anna Kubickova, and to Mike Leggett. (*Id.* at 114.) At that time, Leggett was the supervisor to Plaintiff's supervisor, Tom Green. (Def's Ex. 1 at 54.) Ultimately, based on Blankenship's investigation and conclusions, Leggett made the decision to terminate Plaintiff's employment. (Def's Ex. 2 at 114.) This decision stemmed from the conclusion that Plaintiff "was stealing time from employees . . . [and] denying paying them for time they actually worked." (*Id.* at 51.) More specifically, Defendant terminated Plaintiff's employment based on the conclusions that (1) she "edited the Kronos timekeeping records to not pay . . . employees for time that they worked," and (2) she "knew that employees were working off the clock and she didn't ensure they got paid for it." (*Id.*) Defendant further elected to pay Whitten, Weems, and Broadfoot for all hours that they alleged to have been shorted. (*Id.* at 108; Def's Ex. 3 – Pl's Depo. Ex. 8.)

Following the decision to terminate Plaintiff, Blankenship broke the news to her via telephone during a meeting held on March 26, 2018. (Def's Ex. 5 at ¶ 26.) Tom Green and Haleyville Plant Manager Pete Hayes also participated in the meeting in person with Plaintiff. (*Id.*) Although present in this meeting, neither man participated in the investigation or in the decision to terminate Plaintiff's employment. (Def's Ex. 2 at 113–14.)

Plaintiff was forty-eight years old at the time of her termination. (Def's Ex. 1 at 113.) Following her termination, Defendant hired Stephanie Bailor, a woman, to replace her. (Def's Ex. 6 at 27 – Def's Response to Interr. No. 9.) Bailor was forty-one years old when Defendant hired her to replace Plaintiff. (*See id.*) However, Plaintiff never heard Blankenship or Mike Leggett make any derogatory comments regarding Plaintiff's age. (Def's Ex. 1 at 118–19.) Nor did Plaintiff ever hear Blankenship or Mike Leggett make any derogatory comments regarding Plaintiff's sex. (*Id.*)

## II.   STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson*

*Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine

dispute as to a material fact exists "if the nonmoving party has produced evidence

such that a reasonable factfinder could return a verdict in its favor." *Greenberg v.*

*BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v.*

*Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge

should not weigh the evidence, but should determine whether there are any genuine

issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986).

In considering a motion for summary judgment, trial courts must give

deference to the non-moving party by "view[ing] the materials presented and all

factual inferences in the light most favorable to the nonmoving party." *Animal Legal*

*Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated

assertions alone are not enough to withstand a motion for summary judgment."

*Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory

allegations and "mere scintilla of evidence in support of the nonmoving party will

not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d

1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358

F.3d 859, 860 (11th Cir. 2004)).  In making a motion for summary judgment, "the

moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   DISCUSSION

### A. TITLE VII SEX-DISCRIMINATION CLAIM

Plaintiff's first claim asserts unlawful sex discrimination under Title VII. 42 U.S.C. § 2000e, *et seq*. "A plaintiff in a Title VII case can establish a claim of intentional discrimination by presenting either direct or circumstantial evidence." *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 854 (11th Cir. 2010).[5] Absent direct evidence of discrimination, the Court analyzes a disparate treatment claim under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). However, a plaintiff may always escape summary judgment if she can otherwise present "a convincing mosaic of circumstantial evidence that

---

[5]     "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011)).

Because Plaintiff relies only on circumstantial evidence of discrimination, the Court considers her claim under the *McDonnell Douglas* framework. Under that framework, a plaintiff must "first create an inference of discrimination through her prima facie case." *Trask v. Sec'y Dept. of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016), *abrogated on other grounds by Babb v. Wilkie*, 140 S. Ct. 1168 (2020). "To establish a prima facie case for disparate treatment in an employment discrimination case, the plaintiff must show that: '(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job.'" *Id.* at 1192 (quoting *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006)). Rather than show that a similarly situated employee was treated more favorably, a plaintiff may instead show that, following her termination, the defendant replaced her with someone outside of her protected class. *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). If a plaintiff succeeds in establishing a prima facie case of discrimination, "the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for

its act." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). Once the defendant has presented such a reason, the plaintiff "bears the burden of showing that the reasons offered were merely pretext" for discrimination. *Id.*

The Court need not devote much discussion to several elements of Plaintiff's prima facie case because there is no dispute regarding those elements. For example, the parties do not dispute that Plaintiff, as a woman, is a member of a protected class. Nor do they dispute that she was qualified for her position or that the termination of her employment constituted an adverse employment action.

Plaintiff's prima facie case for discrimination therefore turns on whether she has identified any similarly situated comparators who received more favorable treatment.[6] For this element to be satisfied, Plaintiff and her comparator must be "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc.). Ordinarily, a similarly situated comparator: (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff;" (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff;" (3) "will ordinarily (although not invariably) have been under the

---

[6]     The facts clearly establish that, upon Plaintiff's termination, Defendant hired Stephanie Bailor to replace her. Because Bailor is a member of Plaintiff's protected class, Plaintiff must rely upon the treatment of similarly situated male comparators to establish her prima facie case of discrimination. *See Trask*, 822 F.3d at 1192.

jurisdiction of the same supervisor as the plaintiff;" and (4) "will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28 (cleaned up). In her deposition testimony, Plaintiff identifies numerous male supervisors who allegedly deprived employees of the full time and credit for all hours worked. However, Plaintiff's briefing alleges Defendant was aware only of the conduct of Larry Cagle, so the Court limits its consideration of potential comparators to him.[7]

As an initial matter, the Court is skeptical of whether Plaintiff has even shown that Defendant was aware of any wrongdoing by Cagle at the time that it terminated Plaintiff's employment. A plaintiff identifying similarly situated comparators must also prove that her employer was aware of any misconduct allegedly committed by those comparators. *See Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989). Plaintiff contends that Defendant, through Blankenship, had implicit knowledge of such wrongdoing. In support of this contention, she has produced an email directed to Blankenship in December 2017 in which Plaintiff notes that Cagle, not she, had

---

[7]     It is undisputed that Blankenship received no complaints regarding Tom Green, Doug Purdham, Kevin Lee, or Aaron Loveless. (Def's Ex. 5 at ¶¶ 27, 28, 30, 31.) Thus, any rumors that Plaintiff heard regarding their misconduct are irrelevant. *See Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989) (holding plaintiff had failed to establish prima facie case of disparate treatment when he could not show that decisionmakers knew about and consciously overlooked prior rule violations by comparators). Furthermore, because Plaintiff does not allege in her responsive briefing that these individuals are comparators, the Court deems any argument related to them to be waived. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) (noting that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned).

the ability to edit employee time records on Kronos during 2015. (Def's Ex. 1 – Def's Depo. Ex. 5.)  Because Whitten's allegations against Plaintiff began as early as 2015, Plaintiff reasons that her email implicitly accused Cagle of making any improper edits to Whitten's time records that occurred during that year. Against a key logical hurdle, however, this argument falls flat. Putting aside the fact that Whitten herself affirmatively denies any wrongdoing on the part of Cagle, there is no evidence in the record that any of her allegations implicated him. Although the record indicates that Whitten accused Plaintiff of making improper edits on her Kronos timekeeping records, it does not indicate *when* these improper edits allegedly occurred. To be sure, Whitten's written records of improper timekeeping date back to 2015, but those records make no mention of edits made on Kronos with respect to Whitten's hours.[8] Rather, Whitten's written records concern only her allegations that Plaintiff required her to work from home without pay. Plaintiff has pointed to no other evidence in the record indicating that Whitten ever complained of improper edits made on Kronos in 2015. Thus, there is no reason to conclude that Plaintiff's December 2017 email concerning Cagle's ability to make edits on Kronos was sufficient to place Blankenship on notice that Cagle had made improper edits.

---

[8]     Whitten's written record for March 2017 does mention edits made with respect to Carolyn Weems's hours, recounting that Plaintiff "changes Carolyn['s] time. Sometimes clocks herself out and starts late." (Def's Ex. 2 – Pl's Depo. Ex. 3 at D-0126.)

Even if Plaintiff's December 2017 email constituted a clear accusation of relevant wrongdoing against Cagle, Plaintiff has not satisfied her burden of demonstrating that she and Cagle are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1226. The record indicates only that the same timekeeping policies applied to Plaintiff and Cagle during the relevant period.[9] Beyond that sole commonality, however, there is a stark contrast between the pair.

Plaintiff has not shown that she and Cagle shared a common supervisor. The record indicates that Plaintiff's direct supervisor was Tom Green and that the ultimate decision to terminate her employment was made by Mike Leggett. By contrast, the record does not indicate which supervisors had authority over Cagle, much less reveal a final decisionmaker common to Plaintiff and Cagle both. To be sure, the Eleventh Circuit has cautioned that sharing a common supervisor does "not invariably" characterize the relationship between a plaintiff and her comparator. *Lewis*, 918 F.3d at 1227–28. Nonetheless, Plaintiff's failure to identify a clear common supervisor between herself and Cagle belays any prima facie case of discrimination.

---

[9]     Defendant's employee handbook specifically states that "[a]ltering, falsifying, tampering with time records, or recording time on another employee's time record will result in disciplinary action, up to and including termination of employment." (Def's Ex. 1 – Def's Depo. Ex. 2 at D-0265.) Defendant has not pointed to any reason why this general policy could apply to Plaintiff's editing of time records but not edits made by Cagle.

The Court also finds insufficient evidence to infer that Cagle "engaged in the same basic conduct (or misconduct)" which led Defendant to terminate Plaintiff's employment. *Id.* at 1227. The misconduct of which Plaintiff stood accused included (1) making improper edits to employee timekeeping records on Kronos, and (2) requiring or knowingly allowing employees under her supervision to work off the clock without pay. As explained above, there is no firm evidence that Cagle ever made improper edits to employee timekeeping records. Similarly, Plaintiff has failed to point to any evidence that Cagle faced accusations of allowing employees under his supervision to work off the clock without pay. Without such evidence, Plaintiff has failed to show that she and Cagle engaged in the same basic conduct or misconduct.

Another factor fatal to Plaintiff's prima facie case is the decidedly different employment and disciplinary histories between herself and Cagle. Although Plaintiff and Cagle, at various points, shared similar duties in editing Kronos time records for employees, they more often held fundamentally different positions and responsibilities. Plaintiff worked as a Customer Service Manager, primarily supervising the work of customer service representatives at Defendant's plants. Cagle, by contrast, worked as an assistant plant manager and later a maintenance manager, and his responsibilities never involved the supervision of customer service

employees. More importantly, Plaintiff's termination followed a disciplinary history that differed significantly from that of Cagle. First, unlike with Plaintiff, no employee under Cagle's supervision ever directly accused him of misconduct regarding work performed off the clock or the editing of Kronos timekeeping records. Indeed, employees such as Whitten and Weems affirmatively denied that Cagle ever behaved inappropriately. Second, where Cagle faced, at most, only a single implicit allegation of wrongdoing against Whitten, Plaintiff faced three express allegations of wrongdoing against Whitten, Weems, and Broadfoot. Finally, Plaintiff has alleged that there was an implicit allegation that Cagle made improper edits on Kronos. Even if the Court agreed that Cagle faced such an accusation, the record indicates that Defendant terminated Plaintiff's employment based on a combination of improper editing of Kronos records and the practice of requiring or knowingly allowing employees under her supervision to work off the clock without pay. This contrast in the nature and quantity of acts alleged against Plaintiff and Cagle "highlights a key difference in their employment histories." *Hester v. Univ. of Ala. Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020) (per curiam) (holding that a plaintiff and comparator did not share the same employment history where, even assuming that the plaintiff and the comparator each improperly restrained a patient, only the plaintiff later made a false statement relating to that misconduct). As a result,

Plaintiff and Cagle are not "similarly situated in all material respects," and Plaintiff has thus failed to establish a prima facie case of sex discrimination.

Without having established a prima facie case, Plaintiff may escape summary judgment only if she has otherwise presented "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith*, 644 F.3d at 1328 (quoting *Silverman*, 637 F.3d at 734). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman*, 637 F.3d at 733–34). Regardless of what type of evidence Plaintiff presents, it must be sufficient to "raise[] a reasonable inference that the employer discriminated against" her. *Smith*, 644 F.3d at 1328. For example, in *Smith*, an employee alleging race discrimination created a convincing mosaic when he offered compelling evidence of his employer's motive to treat white employees less favorably, numerous incidents where the discipline of white employees varied considerably from that of black employees, and a "discipline 'matrix'" created by the employer that tracked the discipline and race of employees." *See id.* at 1329–46.

By contrast, Plaintiff has presented absolutely no evidence that links her termination with her sex. She admits that she never heard Blankenship or Leggett, the ultimate decisionmaker, make a derogatory comment regarding her sex. And as explained above, she has also failed to show that Defendant treated anyone outside of her class more favorably, much less that such preferential treatment was systemic. Plaintiff's evidence thus falls far short of creating a convincing mosaic of circumstantial evidence from which the Court could infer that Defendant terminated Plaintiff as an act of sex discrimination.

Accordingly, Defendant's motion for summary judgment is due to be granted with respect to Plaintiff's Title VII sex-discrimination claim.

## B. AGE-DISCRIMINATION CLAIM

Plaintiff also brings a claim of age discrimination under the ADEA. 29 U.S.C. § 621, *et seq.* The ADEA prohibits employers from firing employees who are forty years or older because of their age. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1331 (11th Cir. 2013). To assert an action under the ADEA, an employee must establish that his age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009).

Where a plaintiff relies only on circumstantial evidence to show age discrimination, the Court applies the burden-shifting *McDonnell Douglas* framework.

*Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). "To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." *Id.* Once a plaintiff has established her prima facie case, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012). The plaintiff then bears the final burden of showing that this stated justification was a pretext for age discrimination. *Id.*

The parties do not appear to dispute that Plaintiff has met her initial burden of establishing a prima facie case of age discrimination. The record itself supports such a conclusion. Because she was forty-eight years old at the time of her termination, Plaintiff is a member of the protected class. *See Sims*, 704 F.3d at 1331 ("The ADEA prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age."). She was subject to an adverse employment action through her termination. *See id.* No evidence in the record suggests that she was unqualified to hold her position as Customer Service Manager. Finally, Stephanie Bailor, Plaintiff's replacement, is seven years younger—and thus

substantially younger—than Plaintiff. *See Damon v. Fleming Supermarkets. of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (concluding that five-year age difference between plaintiff and his replacement was sufficient to support a prima face case of age discrimination).

As Plaintiff has established a prima facie case of age discrimination, the burden shifts to Defendant to demonstrate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S 502, 509 (1993)). Here, Defendant asserts that it terminated Plaintiff's employment based on a good-faith belief that she had made improper edits to employees' time-records and had required or knowingly allowed employees under her supervision to work off the clock and without pay. Because the record contains numerous facts relating to Blankenship's investigation and conclusions regarding Plaintiff's misconduct, Defendant has satisfied its burden under the *McDonnell Douglas* framework.

With Defendant having demonstrated a legitimate, non-discriminatory reason, Plaintiff "is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." *Sims*, 704 F.3d at 1332. Evidence of pretext

"must reveal 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (per curiam) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir.2004)) At this stage, "[t]he factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511. "Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination . . . ." *Id.*

Plaintiff has failed to raise a genuine dispute as to the issue of pretext. Even viewing all facts in her favor, Plaintiff has not shown that Defendant terminated her employment for any reason other than its good-faith belief that she had failed to ensure that employees under her supervision received pay for all hours worked. She has not alleged that Blankenship or anyone else under Defendant's employ ever made a disparaging remark about Plaintiff's age or otherwise acted in a way that used age as a factor in employment decisions.

Plaintiff argues that she has satisfied her burden to show pretext by producing her own testimony that she did not violate any work rule upon which Defendant relied to terminate her employment. "The 'work rule' defense is arguably pretextual

when a Plaintiff submits evidence . . . that she did not violate the cited work rule . . . ." *Damon*, 196 F.3d at 1363. However, district courts within this Circuit have applied such a rule only "in cases where the decisionmaker observes the alleged work rule violation and, thus, has personal knowledge thereof." *See, e.g.*, *Sweeney v. Ala. Alcoholic Beverage Control Bd.*, 117 F. Supp. 2d 1266, 1272 (M.D. Ala. 2000). Where the decisionmaker lacks personal knowledge and instead relies upon second-hand information in reaching its decision, the plaintiff "must point to evidence which raises a question as to whether the decisionmaker, in fact, knew that the violation did not occur and, despite this knowledge, fired the employee based upon the false premise of an alleged work rule violation." *Id.* at 1273. The record in this case indicates that Mike Leggett acted as the decisionmaker in Plaintiff's termination.[10] Although Plaintiff has pointed to several pieces of evidence that suggest her lack of culpability, she has not produced sufficient evidence to cast doubt on the fact that Defendant, through Leggett, terminated her employment despite knowing that she had not violated Defendant's timekeeping policies.

There is ample evidence that Defendant's good-faith belief in the allegations against Plaintiff, and not discrimination, motivated its decision to terminate her

---

[10]   The record does not indicate that Blankenship acted as a decisionmaker with respect to the termination of Plaintiff's employment. Moreover, Plaintiff's complaint does not state any claim based upon the investigation itself. (*See* doc. 1.) As a result, Blankenship does not qualify as a decisionmaker in this action.

employment. Its employee handbook specifies that the improper editing of employee time records warrants disciplinary action, including termination of employment. Numerous employees came forward with allegations against Plaintiff for her timekeeping and overtime practices. Furthermore, Blankenship conducted a thorough investigation of the allegations made against Plaintiff for an eleven-month period in 2017, and this review showed patterns of improper editing by Plaintiff. To be sure, the record reveals certain inconsistencies in the accounts given by Whitten and Weems. For example, Whitten alleged in her written records that Plaintiff had openly forced her and other customer service representatives to work off the clock, while Weems alleged that Plaintiff merely implied such a directive. However, the accounts given by Whitten and Weems still share a common allegation that Plaintiff at least knowingly allowed employees under her supervision to work from home without pay. Moreover, the record reveals that Defendant paid Whitten, Weems, and Broadfoot for all hours which they claimed to have been shorted by Plaintiff, indicating that Defendant believed each employee had been wronged. Based on this record, Plaintiff has failed to present any evidence from which the Court could reasonably infer that Defendant's stated reason for terminating her employment was merely a pretext for age discrimination.

Accordingly, Defendant's motion for summary judgment is due to be granted

with respect to Plaintiff's ADEA claim.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (doc. 22) is due to be granted. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on June 8, 2020.

L. Scott Coogler
United States District Judge

199455